**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.:  1:17-mc-21459-MGC

In re: *Ex Parte* Application of H.M.B.
HOLDINGS LIMITED Pursuant to
28 U.S.C. § 1782 to Conduct Discovery
for Use in Foreign Proceedings

Petitioner,

_____/

**MEMORANDUM OF LAW IN OPPOSITION TO REPLAY RESORTS INC.'S
MOTION TO INTERVENE, VACATE THE ORDER GRANTING HMB
HOLDING'S LIMITED *EX PARTE* APPLICATION FOR AN ORDER TO
CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT
TO 28 U.S.C. § 1782, AND TO QUASH OR GRANT A PROTECTIVE ORDER**

H.M.B. Holdings Limited ("HMB"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to the motion filed by Replay Resorts Inc. ("Replay") to intervene,[1] to vacate this Court's April 20, 2017 Order Granting HMB's 28 U.S.C. § 1782 application, and to quash subpoenas or grant a protective order (Doc. No. 7, filed on May 18, 2017).  In support thereof, HMB states as follows:

**INTRODUCTION**

HMB seeks discovery pursuant to 28 U.S.C. § 1782 to aid with the execution of a Privy Council Judgment against the Antiguan Government for which HMB is still owed more than $22 million.  That judgment remains outstanding.  To collect on that judgment, HMB instituted judgment enforcement proceedings in Canada and Antigua.  Replay does not dispute these facts. Instead, Replay attempts to cast HMB in a negative light by alleging material omissions of fact

---

[1] HMB does not oppose Replay's motion to intervene.

in the form of two undisclosed actions, which Replay terms the "Canadian Discovery Proceeding" and the "Canadian Conspiracy Proceeding."[2]

But although several pages are devoted to a mischaracterization of these actions, Replay fails to explain how—even if taken in the best light to Replay—these proceedings in any way support its *vacatur* motion. Neither proceeding impacts the statutory requirements for granting an application under 28 U.S.C. § 1782—a fact Replay does not dispute. Nor does the existence of these actions favor Replay in the exercise of this Court's judicial discretion concerning Section 1782's discretionary factors. To the contrary, the Canadian Discovery Proceeding effectively establishes HMB's only current source for third-party discovery to be via 28 U.S.C. § 1782 in the United States. And the only material effect of the Canadian Conspiracy Proceeding is to potentially establish another foreign proceeding for which HMB may seek the assistance of this Court.

The allegations and disclosures accompanying Replay's motion strongly militate in favor of granting not only the outstanding Section 1782 petition, but future ones as well. Replay's admission of future revenue streams due to Antigua under its Citizenship by Investment Program and of an existing $3 million payment due from Replay to Antigua—which both Replay and Antigua agree properly belongs to HMB—eloquently illustrates this fact. Remarkably, Replay now seeks to improperly withhold this $3 million payment—comprising just under 14% of the amount due to HMB by the Antiguan Government—to punish HMB for involving Replay in its

---

[2] For ease of reference, the terms "Canadian Discovery Proceeding" and "Canadian Conspiracy Proceeding" are used as defined in Replay's Motion ("Replay Mot."). (*See* Doc. No. 7, at 2, 7). All other capitalized terms are used as defined in the Memorandum of Law filed in Support of HMB's Application for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 filed on April 20, 2017.

discovery efforts. But Replay's own filing before this Court reveals that HMB was correct to seek this discovery, and that this Court was correct in providing its assistance with that endeavor.

## BACKGROUND

### I. HMB's Application

On April 20, 2017, this Court granted HMB's Application for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 filed on April 19, 2017 (the "Application"). HMB will not repeat all of the factual allegations set forth in its Application and the supporting materials included therewith, which are hereby incorporated by reference as though fully set forth herein, except to emphasize the following salient facts:

- HMB's Application was premised on the 2007 expropriation of the Property by the Antiguan Government, for which HMB has never been fully compensated despite a Privy Council Judgment requiring the Antiguan Government promptly to do so. HMB Memorandum of Law in Support of its Application to Conduct Discovery ("MOL"), Doc. No. 3, p. 1.

- The Antiguan Government affirmatively stated that it would pay HMB only from the proceeds of its sale of the Property. *Id*. at 2.

- In or around 2015, the Property was sold to Replay for approximately $23 million;[3] HMB received $20 million from the sale.[4]

- The structure of the Transaction was not publicly disclosed. MOL at 2.

- Based on public records, HMB believes that the sale of the Property was at significantly below market value. MOL at 2.

- HMB believes that the sale obfuscates commercial revenue streams being paid to Antigua that should be paid to Petitioner. MOL at 2.

---

[3] Reports quoted different prices for the amount paid. HMB does not concede that this was the actual purchase price paid. MOL at 6.

[4] HMB did not receive all $20 million, as a portion went to cover various charges on the Property. MOL at 5. HMB disputes the propriety of some of these payments, an issue that is not relevant in the instant dispute.

HMB's express purpose in making the Application was to obtain discovery of "information which could lead to the identification of Antiguan Government assets that could lead to the satisfaction of the Privy Council Order." MOL at 2. HMB disclosed to this Court that it also had begun an action in Canada seeking to enforce the Privy Council Judgment against Antigua. HMB further stated that it intended "to use the discovery obtained in this proceeding to assist the Antiguan and/or Canadian courts to enforce the various unsatisfied compensation orders in favor of [HMB]." MOL at 3. There is no dispute that Antiguan and Canadian Judgment Enforcement Proceedings are still ongoing.

## II. The Transaction

### A. *The Purchase Price*

Replay does not dispute that it is the purchaser of the Property. Its interest in acquiring the Property began in or around 2012, and was inextricably linked to the utilization of Antigua's Citizen by Investment Program (the "CIP Program") to render the project financially viable. *See* Affidavit of Paul Jorgensen dated May 10, 2017 ("Jorgensen Aff."), at ¶ 16; attached as Exhibit 11 to the Declaration of Lincoln Caylor in Support of Applicant's Memorandum of Law Opposing Replay Resort Inc.'s Motion to Intervene, Vacate Order, and Quash or Grant a Protective Order ("Caylor Decl."). Replay admits that the revenues and fees paid through the CIP Program are paid to itself and the Antiguan Government. Jorgensen Aff. at ¶¶ 15, 48.[5] Replay thus admits that revenue streams from the CIP Program—derived directly from the development of the Property—will continue to flow to itself and the Antiguan Government for the indeterminate future. Based on these facts, HMB believes that the revenue streams to be

---

[5] "[I]nvestment funds are paid directly by the investor to a licensed agent who forwards the government fees . . . to the CIU, and the investment monies to the real estate developer." Jorgensen Aff. at ¶ 15.

derived from the CIP program figured into the purchase price paid by Replay for the Property, and that the stated purchase price of $23 million does not reflect the full commercial value of the Property. This distinction is obviously critical to HMB's efforts to enforce the Privy Council Judgment. HMB's application, as set forth above, seeks discovery of Antiguan commercial assets that could satisfy the outstanding balance it is owed by the Antiguan Government, including the value of the revenue streams derived from CIP, the manner in which they are being paid, and an explanation of the precise role the CIP played and continues to play in connection with the Transaction.

### B. *Antigua's CIP Program's Troubled History*

HMB fears that if any remaining revenue streams are being directed to Antigua via its CIP Program, that it may never be able to trace and seize these commercial assets. Replay attempts to classify Antigua's CIP Program as similar to the United States' own EB-5 program. Replay Mot. at 15. But as recently as March 2017, the U.S. State Department had the following to say about Antigua's CIP Program:

> Antigua and Barbuda also operates a Citizenship by Investment Program (CIP) *that increases its susceptibility to money laundering and other financial crimes*. . . .
>
> The CIP remains *among the most lax in the world*. An individual is eligible for economic citizenship with a $400,000 minimum investment in real estate . . . . The government established a Citizenship by Investment Unit (CIU) to manage the screening and application process. The CIU does not maintain adequate autonomy from politicians to prevent political interference in its decisions.[6]

The State Department had good reason to conclude that Antigua's CIP program was vulnerable to use for money laundering and political interference. In a plea agreement entered in

---

[6] U.S. Dep't of State, Bureau for Int'l Narcotics and Law Enforcement Affairs, Int'l Narcotics Control Strategy Report, Volume II, at 32, available at https://www.state.gov/documents/organization/268024.pdf (last visited May 29, 2017) (emphasis added).

December 2016 in *United States v. Odebrecht S.A.*, Cr. No. 16-643, Doc. No. 10 (E.D.N.Y, filed Dec. 21, 2016) ("Odebrecht Plea Agreement"), defendant Odebrecht S.A. ("Odebrecht"), a Brazilian holding company facing criminal corruption charges, describes a mid-2015 meeting in Miami with "a consular official from Antigua and an intermediary to a high-level government official in Antigua," which eventually led to a €3 million payment to the Antiguan Government to prevent it "from providing to international authorities various banking documents that would reveal illicit payments made by" Odebrecht. Odebrecht Plea Agreement at ¶ 72. An Antiguan ambassador claimed to accept Odebrecht's payments in his "personal and professional capacity" as a licensed CIP agent.[7] The Consul General in Miami for Antigua at that time was Gilbert Boustany. MOL at 10.[8]

Boustany was also involved in the Replay transaction. In or around June 2014, he served as the first director for the Antiguan entities Replay incorporated to structure its purchase of the Property. MOL at 6-7. Boustany also recommended that Replay hire Jean-Pierre Shoul as a "consultant." Jorgensen Aff. at ¶ 58. Shoul received multiple payments from Replay to his Citibank account in Miami; and the address Shoul listed for that account was a property registered to Boustany. MOL at 9-10.

### III. The Canadian Proceedings

#### A. *The Canadian Judgment Enforcement Proceeding*

On April 7, 2017, the Supreme Court of British Columbia issued an order in favor of HMB granting judgment against the Antiguan Government in the amount of CDN

---

[7] Press Statement by Ambassador E. Casroy James on the Matter of Odebrecht S.A., Meinl Bank (Antigua) LTD and Antiguan Officials (Dec. 28, 2016), at ¶¶ 6-8, available at http://antiguaobserver.com/wp-content/uploads/2016/12/Press-Statement-by-Ambassador-Casroy-James-on-the-matter-of-Odebretch-SA.pdf?x98788.

[8] *See also Antigua Names New Ambassadors*, Caribbean Journal (Sept. 15, 2014), available at http://www.caribjournal.com/2014/09/15/antigua-names-new-ambassadors/.

$28,765,975.41 plus post-judgment interest, which was accompanied by a garnishment order. HMB's original application was supported by evidence obtained by HMB pursuant to its previous Section 1782 filings. The Canadian court raised no objection to the admission of such evidence. *See* Garnishment Application and Order, Exhibit 13 to Caylor Decl.

### B. The Canadian Discovery Proceeding

Replay's motion to vacate is premised in large part on HMB's purported failure to inform this Court of the Canadian Discovery Proceeding. Replay attempts to characterize that proceeding as a substantive action decided on the merits of HMB's claims against the Antiguan Government. But Replay's assertion is false. The Canadian Discovery Proceeding was what is commonly referred to in Commonwealth jurisdictions as a "Norwich Pharmacal" application. Norwich Pharmacal applications, which are based on the adjudicating court's inherent equitable powers, are a form of *ex parte* pre-action discovery that are granted only in limited circumstances. They do not, however, constitute a substantive ruling on the merits of the action for which discovery is sought. Caylor Decl. at ¶ 10.

The only thing the Canadian Court did in the Canadian Discovery Proceeding was to deny pre-action discovery on grounds wholly irrelevant to this action.[9] In no way, however, did the Canadian Discovery Proceeding absolve Antigua (or Replay, for that matter) of any potential liability to HMB. This is self-evident from the fact that HMB subsequently filed a successful garnishment action against the Antiguan Government—the very action referred to in HMB's Section 1782 petition. MOL at 5. Moreover, one of the Canadian Court's bases for denying HMB's Norwich Pharmacal application was that HMB could obtain the same evidence from other sources. *See* Transcript in *H.M.B. Holdings Limited v. Replay Resorts, Inc.*, 2016 BCSC

---

[9] *See* section I.A, *infra*.

2027, at ¶ 39, Exhibit 3 to Caylor Decl. And this is precisely what HMB has properly done with its Section 1782 Application in this Court. The outcome of this portion of the Canadian Discovery Proceeding actually militates in favor of denying Replay's Motion, not granting it.

### C. The Canadian Conspiracy Proceeding

Replay also alleges that HMB misled this Court by failing to disclose its filing of a conspiracy action in Canada. What Replay does not disclose, however, is that this action was never served on Replay. Caylor Decl. at ¶ 11. The act of filing and not serving is a procedural mechanism permissible in the Canadian court system which allows for the tolling of a statute of limitations. *Id.* at ¶ 15. This lack of service means that the Canadian Conspiracy Proceeding has, as a practical matter, not yet commenced. *Id.* at ¶¶ 15, 19. Under Canadian court procedure, Replay would respond to the claim issued by HMB only after it had been served with the complaint. *Id.* at ¶ 17. Instead, Replay took the highly unusual step of seeking to defend a claim that HMB has not yet served or actively pursued. HMB is aware of no statutory precedent or jurisprudence whereby a party has successfully undertaken this unusual step. *Id.* at ¶¶ 19-20. It is far from clear whether the Canadian courts will allow the Canadian Conspiracy Claim to move forward under these circumstances. *Id.* at ¶ 20. And while Replay claims reputational harm arising from press scrutiny achieved by the Canadian Conspiracy Action, Replay's own decision to defend an unserved action has only brought more media attention to this otherwise dormant action. Replay is thus asking this Court to help it heal a self-inflicted wound by vacating an otherwise valid order entered pursuant to Section 1782.

## DISCUSSION

### I. Replay Does Not Satisfy the Requisite Legal Standard to Vacate a Prior Ruling

In the Eleventh Circuit, to prevail on a motion to vacate pursuant to Rule 60(b)(3), the movant "must [1] prove by clear and convincing evidence that [2] an adverse party has obtained

8

the verdict through fraud, misrepresentation, or other misconduct. Additionally, the moving party must show [3] that the conduct prevented the losing party from fully and fairly presenting his case or defense." *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007) (quotation marks and alterations omitted); *see also Campbell v. Sec'y of Dep't of Veterans Admin.*, 603 F. App'x 761, 762 n.1 (11th Cir. 2015) ("Like a Rule 60(d)(3) motion, a Rule 60(b)(3) motion deals with fraud on the court."); *Sec. & Exch. Comm'n v. N. Am. Clearing, Inc.*, 656 F. App'x 947, 949 (11th Cir. 2016) ("Mere conclusory statements of the existence of fraud will not suffice."). Replay fails to satisfy even one of these three prongs.

### A. *The Canadian Discovery Proceeding and the Canadian Conspiracy Proceeding Have No Relevance to the Instant Application*

Instead of addressing the legal merits of HMB's Section 1782 petition, Replay relies on a foreign third party discovery action, filed against a different party, to claim that HMB is now somehow precluded from seeking relief under Section 1782. Replay Mot. at 2, 4-6. While Replay complains of HMB's purported non-disclosure of the Canadian Discovery Proceeding and its subsequent filing of the Canadian Conspiracy Proceeding, what it cannot explain is how either of these facts helps its case, is misleading, or could be prejudicial to Replay. Neither action is relevant at all to these proceedings. The Canadian Discovery Proceeding comprised the denial of a pre-complaint discovery petition, and the Canadian Conspiracy Proceeding is an ancillary action toward which the Section 1782 proceeding was not targeted.[10]

---

[10] Even if they were relevant to the Section 1782 analysis, both the Canadian Discovery and Canadian Conspiracy actions would still permit HMB to seek the discovery requested in the instant Section 1782 petition. In fact, the Canadian Conspiracy action does nothing more than provide an additional proceeding for which evidence pursuant to Section 1782 may properly be sought. And the denial of HMB's Canadian Discovery Action, judged on different standards than a Section 1782 petition (or, for that matter, an actual claim for liability) does not affect whether HMB satisfied the criteria for Section 1782 relief.

9

### B. The Canadian Discovery Proceeding Is Irrelevant to the Analysis of Whether HMB's Section 1782 Application Was Proper

To prevail on an application for discovery in aid of foreign litigation under 28 U.S.C. § 1782: "(1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (quoting *In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007)). Replay does not dispute that HMB's Application satisfies these standards. By contrast, to prevail on a Norwich Pharmacal application, a party must establish:

1. Whether the applicant has provided evidence sufficient to raise a valid, *bona fide* or reasonable claim;

2. Whether the applicant has established a relationship with the third party from whom the information is sought such that it establishes that the third party is somehow involved in the acts complained of;

3. Whether the third party is the only practical source of the information available;

4. Whether the third party can be indemnified for costs; and

5. Whether the interests of justice favor the obtaining of that disclosure.

Transcript in *H.M.B. Holdings Limited v. Replay Resorts, Inc.*, 2016 BCSC 2027, at 7, Exhibit 3 to Caylor Decl.

The statutory prerequisites for an application pursuant to 28 U.S.C. § 1782 on their face have nothing in common with the requirements for a successful Norwich Pharmacal request. Clearly, the requirements for a Norwich Pharmacal are far more stringent when compared to Section 1782, which requires *none* of the elements demanded of a Norwich Pharmacal applicant.

10

Although it is worth noting that, in light of the denial of its Norwich Pharmacal application, the information sought by HMB is apparently accessible only via third parties located in the U.S.[11] And this fact actually supports the granting of HMB's Application. *See, e.g.*, *In re: Application of Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016) (discovery under Section 1782 appropriate after "lack of success in past [foreign] proceedings" because of lack of evidence).

### C. The Discretionary Factors Considered by District Courts in Section 1782 Applications All Favor HMB

Replay does not argue—because it cannot—that the statutory requirements set forth in 28 U.S.C. § 1782, discussed above, are not satisfied. Replay has therefore conceded this point. Accordingly, the *only* substantive question before this Court is whether it properly exercised its judicial discretion in granting HMB's Petition.

The Supreme Court has identified four factors to assist district courts in the exercise of their judicial discretion in Section 1782 applications:

1. Whether the person from whom discovery is sought is a participant in the foreign proceeding;

2. The nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance;

3. Whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and

4. Whether the application is unduly intrusive or burdensome.

---

[11] This is particularly true in light of the fact that as a defendant in an action filed by HMB, Norwich Pharmacal relief, which is only available against innocent third parties, is no longer available to HMB. As discussed in further detail below, at the time HMB filed its Norwich Pharmacal application, it had no intention of suing Replay in any capacity. The fact that later discovery obtained pursuant to § 1782 brought evidence to light to suggest that HMB may have a claim against Replay favors the continued granting of Section 1782 relief.

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004); *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1198-99 (11th Cir. 2015); *JAS Forwarding (USA), Inc.*, 747 F.3d at 1271-72.  None of these discretionary factors favors the granting of Replay's motion.

### 1. None of the targets of HMB's subpoenas is a participant in the foreign proceedings

The first of the four factors is easily resolved in favor of HMB.  None of the targets of the subpoenas served by HMB pursuant to its Application is a participant in any of the relevant actual or contemplated foreign proceedings.  As noted in HMB's prior filing, where, as here, discovery is sought from an entity not participating in the foreign proceeding, the need for court-ordered discovery is apparent.  Replay makes no argument that the evidence sought by HMB can be obtained from these same parties in Canada.  Rather, Replay argues that HMB should be somehow precluded from trying to obtain evidence from third parties because HMB could not get the evidence it seeks from Replay.  In fact, the opposite is true.  As the Supreme Court noted in *Intel*, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach, hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid."  *Intel Corp.*, 542 U.S. at 264 (citations omitted).  The fact that HMB's *only* access to the evidence at issue here appears to be U.S.-based third party targets of its Section 1782 application militates strongly in favor of finding that HMB's petition was properly granted by this Court.  In this respect, the denial of HMB's Norwich Pharmacal application actually favors the granting of HMB's Section 1782 application.  *See In re: Application of Bracha Found.*, 663 F. App'x at 764 (discovery under Section 1782 appropriate after "lack of success in past [foreign] proceedings" because of lack of evidence).

### 2. Replay has failed to demonstrate that the Canadian courts would not be receptive to federal court assistance

"The party opposing discovery under section 1782(a) has the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting denial of a particular application." *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (citations and internal alterations and quotations omitted); *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."); *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) ("[T]he burden is on the opponent of a § 1782 request to prove that the foreign court would reject the evidence obtained through § 1782.").

Replay has utterly failed to satisfy its burden—its sole allegation regarding the receptivity of the Canadian court consists of the following statement: "the very *raison d'etre* of this proceeding is to *circumvent* the Canadian court's denial of HMB's discovery request from Replay. Such a blatant attempted end-around [sic] of the Canadian court's holding would certainly appear to 'offend' that court." (Doc. No. 7, p. 14) (emphases in original). This empty assertion, devoid of any citation to case law or evidence, hardly satisfies Replay's burden of demonstrating a lack of receptivity.

### 3. Replay has failed to establish that HMB's Section 1782 application comprises an attempt to circumvent foreign proof gathering restrictions

As to Replay's allegations concerning HMB's attempts to "circumvent" the Canadian Court's ruling in the Norwich Pharmacal Action, its burden is to demonstrate, "by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011). Here, Replay again fails to satisfy its burden. There is nothing in the statutory

13

framework or jurisprudence surrounding 28 U.S.C. § 1782 to suggest that a failed third party discovery action in a foreign jurisdiction should preclude the filing of a separate third-party discovery action, against different third parties, here.  In fact, the Supreme Court has acknowledged that litigants can receive broader discovery under Section 1782 than is available in foreign tribunals.  *Intel Corp.*, 542 U.S. at 263; *see also Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015).  To confuse the issue, Replay attempts to conflate HMB's substantive claims with its Norwich Pharmacal Action.  HMB was not seeking to use its Section 1782 discovery in the Norwich Pharmacal Action, but rather—as fully disclosed in its application—in its enforcement actions against the Antiguan government, which is precisely what it has (successfully) done.

To the extent that Replay is arguing that HMB's existing Garnishment Action or the filed but unserved Canadian Conspiracy Proceeding[12] favors vacating this Court's prior order or staying the enforcement of the subpoenas issued thereto, this argument also fails.  The policy against circumvention is not an exhaustion requirement that requires litigants to first seek discovery from the foreign tribunal.  *Mees*, 793 F.3d at 303; *In re Inmangement Servs. Ltd.*, 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005).  Replay must instead demonstrate that the foreign tribunal "actively opposes the discovery," which it cannot do.  *In re Application of Mesa Power LLC*, 878 F. Supp. 2d 1296, 1304-05 (S.D. Fla. 2012); *see also In re Clerici*, 481 F.3d at 1335 (stating that no evidence exists to demonstrate application was an attempt to circumvent foreign proof requirements); *In re Kiobel*, 2017 WL 354183, at *6 (S.D.N.Y. Jan. 24, 2017) ("The proper inquiry is . . . whether [the foreign court] imposes a proof gathering restriction or some other prohibition that precludes the use of these materials . . . ."); *In re Application of the Coal.*

---

[12] It is HMB's position that this action should not proceed until it, as plaintiff, decides to advance the action and serve the complaint.  In any event, discovery has not yet commenced in that action.

*to Protect Clifton Bay*, 2014 WL 545823, at *4 (explaining no proof that no further discovery could be held in foreign proceedings) (S.D.N.Y. Oct. 28, 2014); *In re Chevron Corp.*, 2010 WL 4883111, at *3 (W.D. Va. Nov. 24, 2010) (finding no circumvention of foreign proof gathering restrictions because no bad faith in seeking discovery from persons not before foreign tribunal).

Replay's attempt to cast HMB's alleged failure to mention the Canadian Conspiracy Proceeding as a deceptive measure also fails to support its circumvention argument. Replay's angry rhetoric fails to provide any explanation for why HMB would take such a step. The Canadian Conspiracy Proceeding would only add <u>another</u> valid basis on which to premise a Section 1782 application. The simple truth is that HMB's petition is based on its need to enforce the Privy Council judgment against the Antiguan Government. The discovery obtained in connection with those efforts was also relevant to another action—the Canadian Conspiracy Proceeding. Replay cites no case law or statute that restricts HMB's ability to use materials obtained pursuant to its prior Section 1782 requests—which have to date been freely produced without the entry of a protective order[13]—in this or other proceedings. To the extent that the Canadian Conspiracy Proceeding moves forward, HMB would not hesitate to file a Section 1782 action in support of that proceeding, and can see no reason why such a request would not be granted.

### 4. Replay does not have standing to assert that the document request is unduly burdensome or intrusive

There is "no authority for the proposition that intrusion and burden are to be assessed from the perspective of not only the § 1782 respondent, but also interested third parties [such as Replay] who wish to . . . assert rights and objections." *In re Application of the Coal. to Protect*

---

[13] To the extent Replay seeks to enter into a protective order to reasonably restrain the use of discovery obtained pursuant to this current Section 1782 application, HMB would be willing to enter into such an agreement, though HMB notes that Replay has to date made no such request.

*Clifton Bay*, 2014 WL 5454823, at *4 (S.D.N.Y. Oct. 28, 2014); *see also In re Application of Chevron Corp.*, 2010 WL 5173279, at *5 (E.D. Pa. Dec. 20, 2010), *rev'd on other grounds*, *In re Chevron Corp.*, 650 F.3d 276 (3d Cir. 2011) (explaining that "unduly intrusive and burdensome" analysis is "intended primarily to protect the party from whom discovery is sought"). And even if the requests were to be deemed unduly intrusive or burdensome, the Eleventh Circuit has held that "an all-or-nothing approach" is improper; instead, the responding parties (*i.e.*, not Replay) should resolve any scope objections by narrowing the request. *JAS Forwarding (USA), Inc.*, 747 F.3d at 1272-73; *see also in re Clerici*, 481 F.3d at 1335; *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) (stating that parties should "negotiate a reduction" of document production).

Even if this Court were to consider Replay's objections concerning overbreadth and relevance, these are easily overcome.

> **a. The documents and materials relating to the development and financing of the Property are highly relevant to HMB's enforcement action**

The facts surrounding the development and financing around the Transaction are of obvious relevance to HMB's Application. *See Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2258 (2014) (permitting discovery to enforce a judgment against a sovereign state that seeks all potential assets worldwide so that a judgment creditor "can identify where [Antigua] may be holding property that *is* subject to execution") (emphasis in original); *In re Clerici*, 481 F.3d at 1333 (explaining that subpoenas issued under 28 U.S.C. § 1782 can be used to obtain discovery for enforcement of foreign court judgments). Replay's own filings admit that the Transaction was structured to ensure continued revenue streams to Antigua (and Replay) from the CIP Program. Jorgensen Aff. at ¶¶ 15, 48. HMB, in its effort recover the amount to which is due, is entitled to discovery of materials relating to the valuation of the Property, the

manner in which it was financed, and the money flows relating thereto as each of these may lead to the discovery of additional revenue streams and attachable commercial assets.

### b.  Replay's corporate structure is relevant to HMB's application

Replay does not dispute that it engaged in a commercial transaction with Antigua concerning the Property.  Nor does Replay dispute that payments made in connection with the Transaction are properly due to HMB.[14]  Notwithstanding these concessions, Replay has refused to disclose the details of the Transaction to HMB.  HMB therefore seeks discovery of Replay's corporate structure so that it can (a) identify the entities through which monies flowed (or continue to flow) to the Antiguan Government and (b) if possible, seize those money flows.  As of now, only Replay knows whether additional revenue streams due the Antiguan Government in connection with the Transaction continue to flow through Replay entities.  And although Replay denies this to be the case, its own pleadings reveal this existence of live revenue streams including (1) CIP Program payments that will continue to be made to the Antiguan Government and (2) a $3 million dollar payment due to be made to the Antiguan Government by Replay.

### II. There Is No Basis to Stay This Matter Pending Resolution of Canadian Conspiracy Proceeding

Abstention on the grounds of international comity "is the exception instead of the rule." *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1265 (11th Cir. 2000).  In

---

[14] In fact, Replay concedes that the $3 million outstanding balance due on the purchase price should be paid directly to HMB. Jorgensen Aff. at ¶¶ 61-62. Remarkably, Replay now refuses to remit that payment to HMB on the grounds that it was "harmed" by the conspiracy action notwithstanding the fact that Replay negotiated a full indemnity clause with the Antiguan Government, by which the Antiguan Government agreed to indemnify Replay for any losses connected with the legal dispute between HMB and the Antiguan Government.  Not only does this clause render specious any claims of harm, it reveals as a sham Replay's purported surprise over HMB's legal actions—which were foreseen and for which an indemnity clause was incorporated into the Transaction documents.  *See* Paragraph 4.4 of the Purchase and Sale Agreement, Ex. E to the Jorgensen Aff.

particular, abstention is inappropriate where the exercise of the Court's jurisdiction has no potential to disrupt the proceedings of the foreign tribunal, which is the case here. *See, e.g.*, *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Cellulose S.A.*, 41 F. Supp. 3d 1369, 1409 (S.D. Fla. 2011) (declining to stay proceedings where U.S. proceedings "in no way will decide the rights" of parties in Brazilian proceedings); *In re CP Ships Ltd., Sec. Litig.*, 2008 WL 4663363, at *3 (M.D. Fla. Oct. 21, 2008), *aff'd sub nom. In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306 (11th Cir. 2009) (declining to abstain where "the Canadian courts have not rendered a competing judgment on the merits"). Seeking discovery in the United States after adverse evidentiary rulings in a foreign tribunal will not disrupt the foreign proceedings. *In re: Application of Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016) (discovery under Section 1782 appropriate after "lack of success in past [foreign] proceedings" because of lack of evidence).

In contrast, the cases cited by Replay are textbook examples of where abstention is appropriate, and therefore clearly distinguishable. For example, in *Alves Braga*, the court partially stayed discovery under Section 1782 because the U.S. court was asked to make a substantive ruling on an issue of Cayman law "that could affect the posture and perhaps even the outcome of bankruptcy proceedings in Brazil" and that "could have a substantial impact in Brazil on collateral issues unrelated to the subject bankruptcy." *In re Application of Alves Braga*, 789 F. Supp. 2d 1294, 1303 (S.D. Fla. 2011). Specifically, the U.S. litigation presented "the question of whether the Cayman Islands Relationships (Preservation) Law limits the degree of disclosure about Cayman Islands entities . . . in the United States." *Id.* at 1306.

Here, this Court is not being asked to make any substantive findings on issues of Canadian law that could impact the Canadian Judgment Enforcement Action or the Canadian

18

Conspiracy Proceeding. In fact, these are precisely the types of actions for which third party discovery under Section 1782 is intended. *See, e.g.*, *In re Application of Gissin*, 649 F. App'x 27 (2d Cir. 2016); *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016). The absurdity of Replay's position is betrayed by the first sentence of 28 U.S.C. § 1782: "The district court of the district in which a person resides or is found *may order him to . . . produce a document . . . for use in a proceeding or international tribunal*" (emphasis added). Taken literally, Replay's suggestion that this Court should stay any Section 1782 application until after foreign proceedings have concluded would read the statute out of existence. Replay's comity analysis is completely out of place and betrays a fundamental lack of understanding of the purpose and function of Section 1782.

## CONCLUSION

For the reasons set forth above, HMB respectfully requests that this Court (a) deny Replay's motion in its entirety; (b) close this matter; and (c) grant HMB any and all other further relief as deemed just and proper.

Respectfully submitted this 1st day of June, 2017.

>   */s/ Michael S. Vitale*
>   Michael S. Vitale
>   Florida Bar No. 17136
>   E-mail:  mvitale@bakerlaw.com
>   Robert W. Sowell
>   Florida Bar No. 113615
>   E-mail: rsowell@bakerlaw.com
>   **BAKER & HOSTETLER LLP**
>   200 South Orange Avenue, Suite 2300
>   Orlando, Florida 32801
>   Telephone:  407-649-4083
>   Facsimile:  407-841-0168
>   *Attorneys for Petitioner*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 1, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic copies to:

Daniel E. Casey
daniel.casey@klgates.com
Jeffrey T. Kucera
jeffrey.kucera@klgates.com
K&L Gates LLP
Southeast Financial Center
200 South Biscayne Blvd., Suite 3900
Miami, FL 33131
(305) 539-3300
(305) 358-7095
Counsel for Replay

*/s/ Michael S. Vitale*
Michael S. Vitale