UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:17-mc-21459

In re *Ex Parte* Application of H.M.B.
HOLDINGS LIMITED Pursuant to
28 U.S.C. § 1782 to Conduct Discovery
for Use in Foreign Proceedings

                Petitioner,
_____/

**DECLARATION OF LINCOLN CAYLOR IN SUPPORT OF APPLICANT'S
MEMORANDUM OF LAW OPPOSING REPLAY RESORT INC.'S MOTION TO
INTERVENE, VACATE ORDER, AND QUASH OR GRANT A PROTECTIVE ORDER**

I, **LINCOLN CAYLOR**, Barrister and Solicitor, of Bennett Jones LLP, Suite 3400, 100 King Street West, Toronto, Ontario, Canada, declare that:

1. I am a solicitor for the Plaintiff, H.M.B. Holdings Limited, in *H.M.B. Holdings Limited v. The Attorney General of Antigua and Barbuda*, proceeding No. S169831, *H.M.B. Holdings Limited v. Replay Resorts Inc.*, proceeding No. S169832, and *H.M.B. Holdings Limited v. Replay Resorts Inc. et al.*, proceeding No. S172278, all in the Supreme Court of British Columbia, in Vancouver, British Columbia, Canada, and, as such, have personal knowledge of the matters hereinafter declared, save and except where stated to be based upon information and belief and, where so stated, I verily believe them to be true.

**Test for a Norwich Pharmacal Order**

2. Where the normal discovery process afforded to a party will not suffice given the specific circumstances of a case,[1] the Supreme Court of British Columbia may grant relief

---

[1] Such circumstances may include when no notice of civil claim has been commenced as any wrongdoer has not yet been identified and when obtaining the evidence without notice is appropriate.

founded on its inherent jurisdiction in the form of an equitable bill of discovery, otherwise known as a "Norwich Pharmacal" order. Such orders require a third party to provide full information required to advance a claim.

3. Relief provided by a Norwich Pharmacal order is not limited to production of documents, but rather requires providing "full information" to the applicant. Accordingly, such orders can compel production of documents, information, or attendance at an examination under oath.

4. Disclosure of documents may be ordered where an "involved" third person against whom discovery is sought has, even through no fault of his or her own, been involved in the wrongful act of another so as to facilitate the wrongdoing.

5. The principle that underlies such equitable discovery was set out by the Ontario Court of Appeal in *GEA Group AG v. Flex-N-Gate Corporation*, 2009 ONCA 619, a true and correct copy of which is attached hereto as Exhibit 1, stating that:

> [W]here discovery is absolutely necessary in order to enable a party to proceed with a *bona fide* claim, it is the duty of the court to assist with the administration of justice by granting an order for discovery, unless some well-founded objection exists against the exercise of such jurisdiction.

6. Norwich orders have been granted in numerous situations, including:

(a) where the information is necessary to identify wrongdoers;

(b) to find and preserve evidence that may substantiate or support an action against either known or unknown wrongdoers; and

(c) to trace and preserve assets.

7. The circumstances in which such relief is appropriate are evolving. As stated by the UK House of Lords in *Ashworth Hospital Authority v. MGN Ltd*, [2002] 4 All ER 193 (HL),

a true and correct copy of which is attached hereto as Exhibit 2, as referenced by the Ontario Court of Appeal:

> New situations are inevitably going to arise where it will be appropriate for the jurisdiction [to grant a Norwich order] to be exercised where it has not been exercised previously. The limits which applied to its use in its infancy should not be allowed to stultify its use now that it has become a valuable and mature remedy.

8. Factors to be considered on an application for a Norwich order include:

(a) whether the applicant has provided evidence sufficient to raise a valid, *bona fide* or reasonable claim;

(b) whether the applicant has established a relationship with the third party from whom the information is sought such that it establishes that the third party is somehow involved in the acts complained of;

(c) whether the third party is the only practicable source of the information available;

(d) whether the third party can be indemnified for costs to which the third party may be exposed because of the disclosure; and

(e) whether the interests of justice favour the obtaining of that disclosure.

9. These factors, as well as the situations outlined above in which a Norwich Pharmacal Order have been granted, were cited with authority by Madam Justice Griffin in *H.M.B. Holdings Limited v. Replay Resorts Inc.*, 2008 BCSC 2027, a true and correct copy of which is attached hereto as Exhibit 3.

10. A dismissal of a Norwich Pharmacal application does not constitute a substantive ruling on the merits of the potential claim for which discovery was sought.

**Responding to Unserved Pleadings**

11.     On March 10, 2017, HMB commenced a notice of civil claim by filing it in the Supreme Court of British Columbia. HMB took no steps to, and did not serve, the notice of civil claim (the "Conspiracy Claim").

12.     The *Supreme Court Civil Rules*, BC Reg. 168/2009 (the "BC Rules"), set out the procedure for filing and serving pleadings, as well as for responding to pleadings.

13.     Rule 3-2(1) and (2), true and correct copies of which are attached hereto as Exhibit 4 and Exhibit 5, provide a plaintiff with the right to defer immediate service of a notice of civil claim for a period of up to one year, with a possible extension of a further year, following the date of filing. Left unserved, a notice of civil claim will not remain in force.

14.     Rule 3-3(1), a true and correct copy of which is attached hereto as Exhibit 6, provides that to respond to a served notice of civil claim, a person must, within the time for a response to civil claim, file and serve that response. Rule 3-3(3), a true and correct copy of which is attached hereto as Exhibit 7, outlines the period for filing a response and states that it must be done within a maximum of 49 days after service (depending on where the party is served).

15.     Rule 3-2(1) vests in the plaintiff a luxury of time to serve the claim and the plaintiff may in many circumstances wish to file a notice of civil claim without immediately, or ever, serving the defendant—the obvious example being in light of wanting to preserve a claim prior to the expiry of a limitation period.

16.     The deferral of service is a right that is vested with the plaintiff under the BC Rules.

17.     Rules 3-3(1) and 3-3(3) require a defendant to file a response, but only following service of a notice of civil claim. That is when the obligation is imperative.

18.     Rule 4-3(8), a true and correct copy of which is attached hereto as Exhibit 8, provides for deemed service if a notice of civil claim has not been served, but the defendant files a responding pleading. This rule is intended to benefit the plaintiff, so as to assist it in prosecuting the case and to dispense with service requirements usually at the plaintiff's request.

19.     In the unlikely event that a defendant becomes aware of a filed but unserved notice of civil claim that the plaintiff is not prosecuting, and files a response to that pleading, the defendant will be seeking to take advantage of the deemed service rule by attempting to proceed with a claim, cutting down the right of the plaintiff to determine when the engagement in the lawsuit will actually begin, if at all.

20.     This appears to be such a rare event that it is unheard of in British Columbia jurisprudence, indicating that it is most likely not done (if not improper) and in these circumstances it is unclear whether the court will force the plaintiff to prosecute the Conspiracy Claim.

## 1782 Orders in British Columbia

21.     The British Columbia courts have generally permitted parties to obtain Section 1782 orders, and have held that there is nothing in the BC Rules that requires leave of a court to apply for such an order as set out, respectively, in *Penty v. Law Society of British Columbia*, 1999 BCCA 630 at para 41, a true and correct copy of which is attached hereto as Exhibit 9, and *Pro-Sys Consultants Ltd. v. Microsoft Corporation*, 2016 BCSC 378 at para. 26, a true and correct copy of which is attached hereto as Exhibit 10.

## Additional Documents From Canadian Proceedings

22.     The following materials were filed in connection with the aforementioned Canadian proceedings:

(a) The Affidavit of Paul Jorgensen, the Chief Financial Officer of Replay Management Limited, was filed in the Supreme Court of British Columbia on May 11, 2017. A true and correct copy of Mr. Jorgensen's Affidavit is attached as Exhibit 11.

(b) On April 7, 2017, the Supreme Court of British Columbia issued an order in favor of HMB granting judgment against the Antiguan Government in the amount of CDN $28,765,975.41 plus post-judgment interest, which was accompanied by a garnishment order. True and correct copies of the judgment and the garnishing order are attached hereto as Exhibits 12 and 13, respectively.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 1st day of June, 2017.

By: _____
Lincoln Caylor